METROPOLITAN HOME TELEPHONE COMPANY *vs.* GUY C. EMERSON.

Suffolk.   March 11, 1909. — May 26, 1909.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Telephone Company.   Boston.   Municipal Corporations,* By-laws and ordinances, Officers and agents.   *Way,* Public.

An order of the board of aldermen of Boston, purporting to give to a telephone company, which is incorporated under the laws of this Commonwealth but which has not yet any telephone system in actual operation in the city, a right to establish above and below all present and future streets in Boston all such appropriate structures as may be adapted to the installation and maintenance of an electrical or other system for "the transmission of sound, signals and intelligence," discloses the characteristics of a franchise rather than of a permit, and is beyond the power of the board, and therefore void.

The power given by R. L. c. 25, § 54; c. 26, §§ 2, 6, to the selectmen of towns and the mayors and boards of aldermen of cities to permit the use of public ways for telegraph and telephone wires by the laying of wires in the first instance under such ways, is subject to, and cannot be exercised until satisfaction of, the provisions of R. L. c. 122, § 2, as amended by St. 1906, c. 117, relating to the method of applying for such locations, and to public hearings before the granting of them.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on January 19, 1909, and amended on February 12, 1909, for a writ of mandamus directing the respondent, the superintendent of streets of Boston, to issue a permit to the petitioner to open and occupy Linden Park Street, a public street in Boston.

The tenth paragraph of the answer was as follows: "10. And further answering the respondent says that the petition should be dismissed because it does not state a legal cause of action substantially in accordance with the rules prescribed by the statutes of the Commonwealth; and because the facts alleged therein do not constitute or show any legal ground of action by the petitioner against the respondent; and because the facts set forth in the petition show that the board of aldermen had no authority to pass the order therein set forth; and because it appears from said petition that said order is illegal and void, and that the petitioner acquired no right under it to locate poles and to put wires or conduits in the public streets of the city."

The case came on for a hearing upon the merits by *Sheldon*, J., who made the following reservation:

"Being of the opinion that the questions of law raised by the tenth paragraph of the respondent's answer ought to be determined by the full court before any further proceedings had in the trial court, I reserve those questions for that purpose. The reservation is made by agreement of parties, and without having heard any evidence. If these questions are decided in favor of the respondent, the petition is to be dismissed, unless leave to amend the petition is given by a single justice; otherwise the case is to stand for hearing."

*B. B. Jones*, (*A. S. Hayes* with him,) for the plaintiff.

*T. M. Babson*, for the defendant.

RUGG, J. This is a petition for a writ of mandamus to compel the defendant as superintendent of streets of the city of Boston to issue to the petitioner a permit to open and occupy a public street in order to enable it to lay its telephone lines under the street. The petitioner is a corporation organized under the laws of this Commonwealth for the purpose of constructing, maintaining and operating a telephone and telegraph system. On December 13, 1906, the board of aldermen of the city of Boston adopted an order, which purported to grant to the petitioner the right "in, upon, over, under and along the present and future streets, avenues, alleys, viaducts and public places of the city of Boston to cause to be erected, constructed and installed, and operate, maintain and repair lines of conduits, wires, cables and conductors, poles and appliances, . . . and to operate and maintain suitable and adequate apparatus and appurtenances." The order then names more than two hundred streets and squares "in which the lines, conduits, cables, wires and conductors . . . may be laid, placed and installed," and adds "any and all the streets, avenues, alleys and public places directly or remotely connected" with those named. Other expressions are that the petitioner "may erect and maintain a system of conduits, poles, wires, cables and appliances," and that the city officers must "issue permits for distributing poles and appliances." No specific part of any street is designated, where the conduits may be laid or poles placed. No attempt was made to comply with the provision of R. L. c. 122, § 2, as amended

by St. 1906, c. 117. No petition in writing is alleged to have been presented to the board of aldermen, and no written notices of the time and place of a public hearing upon such petition were given to owners of real estate along the ways named. No specification in writing "where the poles may be located, the kind of poles, the height at which, and the places where the wires may run" was given by the aldermen, as required by that statute. The petitioner contends that the order was valid under R. L. c. 25, § 54, and c. 26, §§ 2 and 6, whereby the board of aldermen of a city is empowered "to permit telephone and telegraph lines to be laid under any way or square" and to establish reasonable regulations touching the same.

The order in effect, although slightly veiled in some respects, purports to give to the petitioner a right to locate, above and below all present and future streets in Boston, all such appropriate structures as may be adapted to the installation and maintenance of an electrical or other system for "the transmission of sound, signals and intelligence." Our statutes contemplate and authorize no such ambitious pre-emption of public ways. The policy of our Legislature as shown in all statutes regulating the partial appropriation of public ways to such public uses as are included within the general purpose for which land may be taken from a private owner for highway uses, is to clothe the board, for the time being representing the public interests, with authority to consider and pass upon a present specific need, and not to mortgage futurity in the hope that the requirements of the public service may at some time, more or less remote, warrant the use, or for any other reason. This limitation is not to be found in express phrase anywhere in the statutes, but is one of the basic principles of our policy in dealing with public service corporations. The franchise of the petitioner to be a corporation and conduct its business came from the Commonwealth, and not from the board of aldermen of the city of Boston. This order has many of the features of a franchise. But the board of aldermen was authorized only to permit or specify the location of the conduits and poles and other structures. A permit or location is different in kind from a franchise, and is inferior and subsidiary to it. Sometimes the terms of a permit from or a contract with local authorities are

incorporated in a franchise (see St. 1851, c. 159; *Worcester Gas Light Co.* v. *Worcester,* 110 Mass. 353), but the functions of a franchise cannot be performed by a permit.  The conception of granting to any telephone or street railway company or any other public service corporation at once and in advance of its practical operation the right to occupy all the streets of a municipality is repulsive to our theory of local and State supervision and regulation in detail of constructions in public ways by such corporations.  The power is vested in selectmen and boards of aldermen, not as representatives of the cities and towns, but as independent boards of public officers, who act in a judicial or *quasi* judicial capacity respecting the subject matter. This is for the reason that the Legislature has thought wise from the outset to make these corporations in the use of the streets subject to the control of the local authorities of the municipalities charged generally with the duty of maintaining them in repair.  In some instances there is an appeal·to a State board, but in the first instance the local board acts.  A franchise involves a greater or less degree of comprehensiveness and generality, and its exercise something of time and development.  A permit, specification or location is narrow and definite, adapted to immediate or early use or service, and depending upon present conditions.  In the nature of things there cannot be a present need for permits to use all the streets of a city so large as Boston for the installation of a telephone system no part of which is in actual operation.  The development of such an extensive business necessarily involves a considerable time, a period of years, if experience is taken as a guide.  But the changes, which may well come about in a brief interval, in the additional structures reasonably to be placed in a street, are such as to make it almost inconceivable that the Legislature could have intended to place it in the power of a local board to incumber at once and in advance of any work all streets, and subject future needs to the rights of a single company.  The scope and framework of this order, universal and perpetual in nature, discloses the characteristics of a franchise rather than of a permit, and is so contrary to the scheme of our statutes upon this subject as to be void.

The order is also invalid, for the reason that the terms of St.

1906, c. 117, were not complied with.  The petitioner contends that, although the order authorizes the erection of poles, yet these portions, which concern the laying of underground conduits, may be held legal because so separable from its other provisions as not to lead to the conclusion that the pole locations were of its essence and that it would not have been adopted without them.  We do not discuss this contention, for the reason that the petitioner's further necessary argument, that the granting of permits for underground conduits is wholly governed by R. L. c. 25, § 54, is unsound.  This section, with R. L. c. 26, §§ 2 and 6, empowers selectmen and boards of aldermen to permit the laying of underground conduits for telephone and telegraph wires and the establishment of regulations in cities by ordinance for the erection and maintenance of such lines, but does not require a petition in writing, notices to abutting landowners, hearing and a record, filed with other municipal records, of the decision and specification granted.

The petitioner contends that no notice to abutters was required.  Its contention, if sound, reaches to the requirement for a petition, the making of the specification in writing, the hearing and the filing of record.  If supported, it would allow an oral application for a permit to lay underground conduits and the *viva voce* granting of the same without specification or any written evidence or record respecting it, save the journal, which the city clerk may be required to keep of the proceedings of the board of aldermen.  See St. 1854, c. 448, § 30.

In view of the multiplication of uses to which the space beneath the surface of streets is now put in large cities, the crowded condition in many places, the expense and danger involved in uncovering some of those underground structures, the great inconvenience to the public from prolonged excavation in the streets and the immense importance of preserving among public records the precise position of underground structures and defining with exactness the rights of their owners, this result cannot be assumed to have been the intent of the Legislature unless made clear by unmistakable language.

The general subject of the construction of lines for the transmission of intelligence on highways is regulated by R. L. c. 122 and its amendments.  This is indicated by its title and sub-titles.

That it was intended to govern and be a code for the whole subject is inferable also from its history in St. 1849, c. 93, Gen. Sts. c. 64, Pub. St. c. 109, and St. 1895, c. 350, all of which manifest increasing detail of regulation. The provision now found in R. L. c. 25, § 54, upon which the petitioner relies, was first enacted by St. 1880, c. 83. Its title, "An Act concerning telegraph and other wires," as well as express reference in its § 3, is some indication that its provisions were intended to attach by way of amendment to the general law touching telegraph companies, then found in Gen. Sts. c. 64. But when the statute law was consolidated in the Public Statutes, its provisions were incorporated in the chapter relating to towns, probably because it authorized regulations and ordinances by municipalities, and this arrangement has been continued in the Revised Laws.

But the substance and not the collocation of a statute is the controlling consideration in its interpretation. This provision confers jurisdiction, it does not prescribe procedure. It empowers municipal officers to authorize the laying of underground conduits for wires. But the general subject of wires of telephone companies being regulated in another chapter, the procedure there pointed out must govern the exercise of the authority conferred. The title of St. 1906, c. 117, "An Act relative to the granting of locations for poles and wires in towns," by the word "wires" comprehends their location under as well as above the surface of highways. The body of the act refers to "the poles . . . the places where, the wires may run," to "fixtures upon or along any public way" and to the proposal of companies "to construct . . . lines" all of which are not inapt to include underground construction. The substance of said c. 117 as to written petition, hearing, notice to landowners, written specification of precise locations, and public record thereof apply in reason with quite as much force to that which is below as to that which is above the street surface. Almost irreparable confusion and mischief would be wrought by adopting any other construction of the statutes.

These considerations lead to the conclusion that the procedure provided by St. 1906, c. 117, applies to permits granted to companies under R. L. St. c. 25, § 54, for underground constructions

as well as to overhead structures authorized by other provisions of law. We do not intimate that this procedure applies to the putting of existing overhead wires underground at the command of the Legislature upon terms enacted with reference to the special conditions of particular municipalities. See St. 1894, c. 454, St. 1898, c. 249, St. 1908, c. 347, as to Boston; St. 1900, c. 276, as to Springfield; St. 1902, c. 372, as to Worcester; St. 1905, c. 278, as to Somerville; St. 1906, c. 131, as to Pittsfield; St. 1906, c. 391, as to Haverhill.

*Petition dismissed.*