DONALD H. ANGUS & others *vs.* FLORENCE GREEN MILLER & another.

Plymouth.    May 11, 1977. — June 28, 1977.

Present: GOODMAN, GRANT, & ARMSTRONG, JJ.

*Zoning,* Nonconforming use or structure.

A provision of a town's zoning by-law that "[a]ny lawful building, or structure or use of a building, structure or premises existing at the time of this By-law . . . is adopted, even if not in conformity with its provisions, may be continued and, if authorized by the Board of Appeals, may be . . . enlarged" could not be construed to authorize the board to grant a permit for the voluntary razing of existing buildings and the construction of entirely new nonconforming buildings in their place. [472-473]

CIVIL ACTION commenced in the Superior Court on September 30, 1975.

The case was heard by *Keating, J.*

*Marc E. Antine* for the defendants.
*Robert W. MacDonald* for the plaintiffs.

GRANT, J.    The complaint in this case was brought under the provisions of G. L. c. 40A, § 21 (as in effect prior to

Angus *v*. Miller.

St. 1975, c. 808, § 3), by a group of abutters and others to challenge the validity of a decision of the board of appeals of the town of Wareham (board) by which the board purported to grant a special permit to the owner of certain premises located on the Cranberry Highway, so called, to raze the buildings presently located on the premises and to construct thereon a modern motel and related facilities. A judge of the Superior Court, after hearing, annulled the decision of the board. The owner appealed.[1]

The basic facts are not in dispute. The structures presently located on the premises consist of a single-story building containing eight living units, built around 1938, and two cabins of undetermined vintage which are used for rental purposes. All three buildings appear to have been operated under some form of lodging house license (see G. L. c. 140, §§ 22-31) since 1939. The premises are located in what is now a "Commercial D" zoning district, in which motels appear to be permitted, but the buildings antedate the adoption of the present zoning by-law and do not comply with the density and sideline requirements of the by-law. They continue to exist as a valid nonconforming use under the introductory part of § IV ("Exceptions and Administration") A ("Non-Conforming Uses") of the by-law.[2] What is proposed, and what was approved by the

---

[1] One Krumrine, who appears from the evidence to be the prospective purchaser and redeveloper of the premises, purported to join the owner in her claim of appeal. Krumrine was not named as a party defendant in the complaint, nor did he seek to intervene in the proceedings. It is clear from the record, however, that counsel for the owner speaks for Krumrine as well. The board answered the complaint but has otherwise assumed a completely passive role.

[2] "[A] Any lawful building, or structure or use of a building, structure or premises existing at the time this By-law or any amendment thereto is adopted, even if not in conformity with its provisions, may be continued and, [B] if authorized by the Board of Appeals, may be [1] rebuilt if damaged or destroyed, [2] enlarged, or [3] changed to a specific new use not substantially different in character or more detrimental or objectionable to neighborhood, [C] provided that if the building or premises or use thereof has been or shall be discontinued for a period of one year it shall not be re-established, and future use of said building, structure, or premises shall be in conformity with this By-Law." The letters and numbers in brackets have been inserted for ease of reference in the body of the opinion.

special permit in question, is the razing of all the existing buildings and the construction of an entirely new five-story motel which would contain more than thirty individual living units, an apartment for the manager, and certain other rooms which need not be described here. The new building would also be in violation of the density requirement of the by-law.[3]

The petition to the board does not appear to have been made part of the record, but it is clear from the written decision of the board that it purported to derive its authority to grant the permit from that part of § IV A of the by-law which is bracketed as [2] in note 2 hereof and which is concerned with the enlargement of existing nonconforming buildings, structures and uses. The owner has based her arguments and staked her appeal on the proposition that the word "enlarged" which appears in [2] should be construed to include the demolition of existing nonconforming buildings and the construction of new nonconforming buildings.[4] We think the arguments overlook the structure of this particular by-law and ignore the rule of construction that " '[n]one of the words of a ... [by-law] is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the ... [by-law], so that the enactment considered as a whole shall constitute a consistent and harmonious ... [legislative] provision capable of effectuating

---

[3] The chairman of the board testified at trial that the board had not yet been requested to grant a variance from the density or any other requirement of the by-law.

[4] See, generally, *Inspector of Bldgs. of Burlington* v. *Murphy,* 320 Mass. 207, 208, 209, 210 (1946); *Planning Bd. of Reading* v. *Board of Appeals of Reading,* 333 Mass. 657, 658, 660, 661 (1956); *Vasilakis* v. *Haverhill,* 339 Mass. 97, 98-99, 100-101 (1959); *Chilson* v. *Zoning Bd. of Appeal of Attleboro,* 344 Mass. 406, 407, 410-411, 412-414 (1962); *Simeone Stone Corp.* v. *Board of Appeals of Bourne,* 345 Mass. 188, 190-192, 192-193 (1962); *Cullen* v. *Building Inspector of No. Attleborough,* 353 Mass. 671, 673-674, 677-678, 680 (1968); *Crawford* v. *Building Inspector of Barnstable,* 356 Mass. 174, 177 n.4, 179-180 (1969); *McAleer* v. *Board of Appeals of Barnstable,* 361 Mass. 317, 319 n.1, 321, 322, 323 (1972); *Werner* v. *Board of Appeals of Harwich,* 2 Mass. App. Ct. 647, 649-651 (1974).

the presumed intention of the ... [town meeting].' " *Hebb* v. *Lamport,* 4 Mass. App. Ct. 202, 207 (1976).

The by-law in question is carefully constructed. The first part (bracketed as [A] in n.2) is concerned with the continuation of nonconforming buildings, structures and uses as of right. See G. L. c. 40A, § 5, as in effect prior to St. 1975, c. 808, § 3. The second part (bracketed as [B]) is concerned with the limited circumstances in which the board of appeals is authorized to grant special permits (see *Berliner* v. *Feldman,* 363 Mass. 767, 770 [1973]) for [1] the rebuilding of nonconforming buildings and structures which have been damaged or destroyed, [2] the enlargement of nonconforming buildings, structures and uses, and [3] changes of nonconforming uses to other nonconforming uses. The third part (bracketed as [C]) is concerned with the discontinuance of nonconforming uses.

The only part of [B] which contemplates the replacement of existing nonconforming buildings or structures with new nonconforming buildings or structures is [1], in which the word *"re*built" (emphasis supplied) is expressly qualified by the words "if damaged or destroyed." The usual construction of the last quoted words, and the one we think must prevail in this case, is, "damaged or destroyed by catastrophe." See and compare *Berliner* v. *Feldman,* 363 Mass. at 769, 770, 771-772, 773. Applying the rule of construction quoted from the *Hebb* case, *supra,* we conclude, as did the trial judge, that the word "enlarged" appearing in [2] of the by-law cannot properly be construed to authorize the board of appeals to grant a permit for the voluntary razing of existing buildings and the construction of entirely new nonconforming buildings in their place. Compare *Werner* v. *Board of Appeals of Harwich,* 2 Mass. App. Ct. 647, 649-651.

The judgment is affirmed; the plaintiffs are to have costs of appeal against the defendant Miller.

*So ordered.*