Toomey, J.
INTRODUCTION
Plaintiff sought a special permit from Defendant for' the purpose of demolishing residences existing on his property and replacing them with new residences. Defendant denied Plaintiffs application and Plaintiff has addressed this court in an effort to annul Defendant’s decision and to obtain the special permit. The matter was tried, pursuant to G.L.c. 40A, §17, and evidence was received. Based upon that evidence, the court will enter the following findings of fact.
FINDINGS OF FACT
.1. On September 23, 1991, Plaintiff applied to the Town of Dudley Board of Appeals, “requesting a Special Permit to demolish (5) five cottages and replace them with (5) five year round homes.” (Exh. 1.)
2. The application was heard by the Board on November 7, 1991. (Exh. 2.)
3. On December 12, 1991, the Board voted — four to zero — to deny the application. (Exh. 3.)
4. On December 16, 1991, the Board filed its decision with the Dudley Town Clerk.
5. On December 31, 1991, plaintiff mailed his N otice of Appeal to the Dudley Zoning Board of Appeals and to the Dudley Town Clerk.[1]
6. On December 31, 1991, plaintiff filed the instant Complaint in the Worcester Superior Court.
7. The evidence adduced at trial of the complaint established that:
(a) On May 15, 1991, plaintiff obtained title to the two acre property upon which the buildings at issue are sited. (Exh. 5)
(b) The property — a peninsula jutting into Hayden Pond at roughly a right angle from Hayden Pond Road — was located in a “Residential-25" zoning district.
(c) On October 21, 1982, the Building Inspector for the Town of Dudley had granted to plaintiff two permits allowing plaintiff to erect additions to the existing buildings on lots #7 and #8 of the property (Exhs. 16, 17.) Those lots were located at the front of the property within a few feet of Hayden Pond Road, a public way (Exh. 7)
(d) On April 7, 1988 the Zoning Board of Appeals for the Town of Dudley had granted to plaintiff a “Special Permit to demolish 2 existing summer cottages and to replace with 2 year round homes.” The Notice of Decision was filed with the Town Clerk on May 6, 1988. The special permit thus granted pertained to the buildings located on lots #1 and #6 of the property (Exh. 18.) Those lots were located at about the midpoint of the property within a few feet of the shore of Hayden Pond. (Exh. 7)
(e) The lots, upon which are sited the buildings at issue in the instant case (#1, 2, 3, 4 and 5), are located to the middle and rear of the property and within a few feet of the shore of Hayden Pond. (Exh. 7)[2]
(f) The five existing residences are now 50 to 70 years old, and plaintiff rents them on a year to year basis. Each existing residence contains 550 square feet. Plaintiff intends to replace each, if his application for special permit is granted, with residences of 720 to 740 square feet. Unlike the existing structure, the proposed dwellings will each have foundations and central heat. The existing structures, each accommodate three to four occupants; the proposed buildings would accommodate two to three persons apiece. Plaintiffs purpose in proposing demolition and reconstruction is to upgrade summer cottages into year-round residences.
(g) Even though the cottages are currently leased on an annual basis, the tenants use the cottages infrequently in the spring, fall and winter. There are some occasions when the occupancy of the cottages changes from month to month and that circumstance suggests that some of the cottages sub-let.
(h) Each existing cottage is in violation of Dudley Zoning Bylaw 2.04.02 (Exh. 6.) Each proposed residence will be similarly in violation.
(i) Hayden Pond Road, in the vicinity of plaintiffs property is winding, narrow and hilly. There is no shoulder between the paved surface and the dense vegetation on both sides of the road. There is, however, no evidence of motor vehicle accidents on the road occasioned by vehicles entering or exiting the plaintiffs property.
DISCUSSION
A. THE DEFENSE OF TARDINESS
This court is aware that the notice requirements of G.L.c. 40A, §17, are to be “policed in the strongest way,” Marion v. Board of Appeals, 5 Mass.App.Ct. 764 (1977), but, as noted in FINDING OF FACT No. 5, supra, plaintiff did serve the notice of appeal and *286 copy of the complaint upon the Town Clerk within twenty-days of the filing of the Board’s decision. The demands of G.L.c. 40A, §17 were, therefore, satisfied and present no occasion for derailing the complaint at bar.
B. THE MERITS OF THE COMPLAINT
Assuming, arguendo, that the cottages were “lawfully in existence” at the time of the promulgation of the dimensional requirements of Dudley Zoning Bylaw 2.04.02, then the proposed demolition and reconstruction must result in structures compliant with that by-law unless the “new” structures do not create a “substantial extension of such use,” G.L.c. 40A, §6, or unless a variance from the By-law’s mandate has been granted. Rockwood v. Snow Inn Corp, 409 Mass. 361, 364 (1991). At bar, the proposed structures do constitute a “substantial extension” of their use because they will be metamorphosed from foundation-less, heat-less summer cottages to year-round residences. And, no variance has been granted. The dimensional demands of Dudley Zoning Bylaw 2.04.02 are, therefore, fully applicable to the proposed residences and, because the latter do not satisfy the former, the special permit, had it been issued, would have been unlawful.
Assuming, again arguendo, that the Zoning Board of Appeals was authorized to issue the special permit, its determination not to do so in the case at bar was neither unreasonable, whimsical, arbitrary, capricious, based on legally untenable grounds nor in excess of the Board’s power. In the absence of at least one of those descriptives, the Board’s decision cannot be said to be an abuse of its discretion and ought, therefore, not be disturbed upon G.L.c. 40A, §17 review. Federman v. Board of Appeals of Marblehead, 35 Mass.App.Ct. 727, 730-31 (1994).
The proposed reconstructions would not only substantially increase the square footage of the residences to be constructed, but would also alter their usage from predominantly summer seasonal to annual. The nonconformity of the existing structures, although “grandfathered” by G.L.ch. 40A, §6, would be continued ad infinitum if the proposed reconstruction were to be permitted. Such a continuation is wholly incongruous with Dudley Zoning Bylaw 2.02.00 (“. . . the intent [is]. . . not to encourage their continuation”). The proposed reconstruction, involving as it does the total demolition of the existing structures and the creation of new residences, is hardly an “extension or alteration,” G.L.c. 40A, §6, of the cottages,[3] and, even if it were, the Board’s finding that the reconstruction “shall be substantially more detrimental to the neighborhood than the existing nonconforming structure" (Exh. 4) is both handsomely supported by the evidence at bar and fully in line with the principles expressed in said §6.
Finally, this court is not persuaded by Plaintiffs contention that the 1988 award of special permits in connection with demolition and reconstruction of the cottages on lots #1, and #6 demonstrates the arbitrariness of the instant denial, in 1991, of similar permits for lots #1, 2, 3, 4 and 5. Surely, it is not an abuse of the Board’s discretion to view with concern the density created by five year-round residences while harboring less anxiety with respect to the density occasioned by two year-round residences. The Board was entitled to factor into its analysis the nature of the access roadway to the property and its structures and the public safety worries that might arise should five, rather than two, year-round residences be impressed onto the peninsula.
CONCLUSION
The evidence at bar, and the facts found by the court during its de novo hearing of the complaint, do not suggest that the Board’s decision to reject the application for special permit was unreasonable, whimsical, arbitrary, capricious, legally untenable or in excess of the Board’s authority. The fact that one member may have expressed a supplemental rationale for the decision[4] does not erode this conclusion because, even if that rationale were illegitimate, the other grounds upon which the decision is founded provide adequate sustenance for the Board’s action. See, eg., Texstar Construction Corp. v. Board of Appeals of Dedham, 26 Mass.App.Ct. 977, 979 (1988).
For the reasons aforestated, judgment shall enter for the defendant upon the complaint.

This finding is the product of an extremely indulgent assessment by the court of the evidence and court papers. Plaintiffs affidavit, executed on January 10, 1992, does not assert the date within which the requisite service of Notice was effected. (See paper #2 in WSC #91-3827.) We may infer from the affidavit that the Notice and Complaint were mailed on or before January 10, 1992. The complaint itself, filed on December 31, 1991, has appended to it a "Notice of Appeal,” the certificate of service of which is undated as to the date of its mailing. (See paper #1 in WSC #91-3827.) We may infer from the filing date of the Complaint cum Notice that mailing of the latter was on or before December 31,1991. Accordingly, the inference that service of the Notice occurred on December 31, 1992, may be indulged. Mass.R.Civ.P. 5(b). And, while the copy of the Notice appended to the filed Complaint recites that it was mailed only to the “Town of Dudley, Zoning Board of Appeals” (paper # 1, supra), the affidavit does suggest that the copy was mailed also to the Town Clerk. (Paper #2, supra.) The sum of all the inference drawing and the granting to plaintiff the benefit of the doubt is the conclusion that the notice requirements of G.L.c. 40A, §17 have been satisfied.

It appears that, notwithstanding the April 7, 1988, granting of a special permit with respect to lot #1, the permitted work was not done because the present matter also seeks permission to do work on lot #1.

Cf. Angus v. Miller, 5 Mass.App.Ct. 470, 473 (1977) (construing by-law’s use of “enlarged” not to include razing and construction of “entirely new" building).

The minutes of the Boards December 12, 1991, meeting reveal that, in addition to the separately numbered reasons for the denial, one member “stated his concerns with setting a precedence [sic] if this was granted.” (Exh. 3.) That expression is not shown to have been formally adopted by the Board and the reference in its Notice of Decision (Exh. 4) is nothing more than a recording of the supplemental views of the declarant.